ORDER ENTERED ON:
1-7-03
BL
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:

HANDY & HARMAN REFINING GROUP, INC.               Chapter 7

               Debtor                        Case No. 00-20845
                                           Adv. No. 02-2273

HANDY & HARMAN REFINING GROUP, INC.
               Plaintiff

               v.

HANDY & HARMAN, INC.

               Defendant

**APPEARANCES:**

    William H. Champlin III, Esq. & William S. Fish, Jr., Esq.
    Tyler Cooper & Alcorn, LLP, CityPlace - 35th Floor
    Hartford, CT 06103-3488
    Counsel for Plaintiff

    Richard B. Friedman, Esq., John K. Crossman, Esq.
    & Robert J. Grand, Esq., Dreier & Baritz LLP
    c/o Baker, O'Sullivan & Bliss, P.C., Putnam Park, Suite 100
    100 Great Meadow Road, Wethersfield, CT 06109-2371
              and
    William J. O'Sullivan, Esq. and Raymond C. Bliss, Esq.
    Baker, O'Sullivan & Bliss, P.C.
    Putnam Park - Suite 100, 100 Great Meadow Road
    Wethersfield, CT 06109-2371
    Counsel for Defendant

AO 72A
(Rev.8/82)

## RULING AND ORDER ON A MOTION TO DISMISS

I.

The debtor, Handy & Harman Refining Group, Inc. ("HHRG"), on August 14, 2002, filed a one-count complaint against Handy & Harman, Inc. ("the defendant") seeking money damages and indemnification for loss of HHRG's value as an operating business ("Buyer Damages"), based upon an asset-purchase contract executed by them in July 1996. The defendant, on October 15, 2002, filed a motion ("the motion") to dismiss the complaint contending that HHRG has no interest in or right to bring this action and is not the real party in interest because HHRG assigned all of its rights and interest in prosecuting its claims in this action to HHRG's insurer under a settlement agreement. The motion asserts it is brought pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 17(a), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012(b) and 7017.[1] HHRG, on November 4, 2002, filed a memorandum of law in opposition contending that it did not assign its right to seek Buyer Damages from the defendant. The defendant submitted a reply brief.

---

[1] Fed. R. Civ. P. 12(b)(1) refers to the defense of "lack of jurisdiction over the subject matter"; Rule 12(b)(6) refers to the defense of "failure to state a claim upon which relief can be granted"; and Rule 17 provides that: "Every action shall be prosecuted in the name of the real party in interest." Asserting that the court, on a Rule 12(b)(6) motion, may consider "matters of which judicial notice may be taken," and citing Second Circuit authorities to that effect, the defendant submitted as exhibits the various documents referred to in Section II.B.

II.

Facts

A.

The Complaint

The complaint alleges the following facts. HHRG, on March 28, 2000, filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. The court, on August 20, 2001, entered an order confirming HHRG's modified second amended plan. Prior to August 1996, the defendant owned and operated a division of its business called the Precious Metals Refining Division ("the Division"). In July 1996, the defendant entered into a purchase agreement ("the Purchase Agreement") with Golden West Refining Corporation Limited ("Golden West"), in which the defendant agreed to sell the Division's assets to Golden West or to any subsidiary of Golden West. Golden West created HHRG as a subsidiary corporation for the purpose of acquiring the Division's assets. Golden West, on August 15, 1996, assigned all of its rights and interests under the Purchase Agreement to HHRG, and on August 20, 1996 ("the Closing Date"), HHRG completed the purchase transaction. The Purchase Agreement, in Section 9.2, provided HHRG, as "Buyer," with the following indemnification rights:

> (a) Subject to the terms and conditions set forth herein, from and after the Closing, Seller shall indemnify and hold harmless Buyer and its directors, officers, employees, affiliates, controlling persons, agents and representatives and their successors and assigns (collectively, the 'Buyer Indemnitees') from and against any and all liability, demands, claims, actions or causes of action, assessments, losses, damages, costs, and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively 'Buyer Damages') asserted against or incurred by any Buyer Indemnitee as a result of, relating to or arising out of the

3

following:

. . .

(iv) Any event, fact or condition relating to or arising from the ownership, control, management or operation of the Business or the real property owned or leased by the Business or the other assets of the Business or otherwise arising or occurring prior to the Closing Date regardless of whether Seller or Buyer had knowledge or was aware thereof, and regardless of whether or not such events constitute a breach of a representation or warranty hereunder, on or prior to the Closing Date . . . .

(Compl. ¶ 17.)

Prior to the Closing Date, the defendant employed Barry Wayne ("Wayne") who served as President of the Division, and retained Michael M. Verleysen ("Verleysen") as a consultant for the Division. Wayne and Verleysen, prior to the closing, engaged in various unauthorized transactions, including, inter alia: advancing millions of dollars of Division money to certain foreign companies; engaging in fraudulent tax incentive schemes; and falsely recording the Division's financial records and statements. These transactions continued after the closing and caused "the loss of [HHRG's] value as an operating business." (Compl. ¶ 52.) HHRG alleges that the aforementioned losses are considered "Buyer Damages" as provided for in the Purchase Agreement because "[t]hese losses and damages relate to or arise out of events, facts or conditions relating to or arising out of the management or operation of the business of the [D]ivision on or prior to the Closing Date," and "the [d]efendant is obligated under the Agreement to indemnify [HHRG] against the aforementioned

4

Buyers Damages." (Compl. ¶¶ 55-56.) The complaint seeks $8,500,000 in damages.[2]

B

The Motion to Dismiss

According to the defendant, the documents submitted with the defendant's motion establish the following facts. HHRG, on February 22, 2000, submitted a claim ("the Claim") to certain underwriters ("the Underwriters") of HHRG's Bankers Insurance Policy for losses HHRG incurred from the alleged unauthorized actions of Wayne and Verleysen. HHRG, on October 24, 2001, filed a motion to Compromise and Settle Insurance Loss Claim. The court, on November 2, 2001, entered an order granting HHRG's motion and approved a settlement agreement ("the Settlement Agreement"). The Settlement Agreement provided, inter alia, that in exchange for $12,500,000 HHRG would assign to the Underwriters:

> [A]ll rights, title and interest in any and all claims which the Assured has, had, or may ever have as to all losses asserted by the Assured in the Claim, plus interest, costs, and punitive damages arising from such losses . . . . [T]he Assured acknowledges that this assignment [with one exception] is full and complete, and without reservation, for Underwriters to pursue recovery of all losses asserted by the Assured in the Claim.

(Def.'s Ex. C at 6.) The Settlement Agreement characterized the Claim[3] as representing

---

[2] An amount allegedly limited by the Purchase Agreement.

[3] HHRG itemizes the damages submitted on its Claim against the Underwriters as follows:
(a) $14,547,054 in money lost from unauthorized payments to Panexim SA in Peru;
(b) $3,118,039 in improper consulting fees paid by HHRG;
(c) $505,384 in bonus payments to employees earned as a result of unauthorized actions; and

5

"losses arising from acts, errors, or omissions on the part of former employees/consultants of HHRG . . ." and indicated that the Claim was "more fully explained in a memorandum submitted on [March 9, 2000] and more fully documented in a proof of loss dated [October 9, 2000]," both of which are incorporated by reference in the Settlement Agreement. (Def.'s Ex. C at 1.)

Pursuant to its status as HHRG's subrogee and as the assignee of HHRG's Claim, the Underwriters, in March 2002, filed a six-count complaint in the Connecticut Superior Court against Wayne, Verleysen, and certain other former employees of HHRG. (Def.'s Ex. D.) The allegations in that complaint mainly concern losses to HHRG due to unauthorized actions committed between September 1996 and March 2000 by certain HHRG employees. The complaint asserts actions for conversion, breach of fiduciary duty, fraud, civil conspiracy, tortious inducement of breach of fiduciary duty, and restitution.

### III.

### Arguments

The motion asserts that HHRG "no longer maintains an interest in the subject matter of this lawsuit" because the Settlement Agreement represented a complete assignment of HHRG's interest in its Claim to the Underwriters. (Def.'s Mot. at 2.) The defendant argues that HHRG's lawsuit against the defendant is an attempt at a double recovery based upon identical facts underlying its Claim previously assigned to

---

    (d) $160,000 in expenses incurred to pursue the insurance recovery.
(Pl.'s Brief in Opp. at 6.)

6

the Underwriters.

HHRG counters that the assignment to the Underwriters does not include its indemnification contract rights under the Purchase Agreement. HHRG asserts that the Claim and the instant complaint are two totally separate and distinct legal actions with different losses, not joined or linked as part of the Settlement Agreement. HHRG argues that there is no possibility for double recovery because the Underwriters never paid HHRG for its Buyer Damages. HHRG further asserts that, in any event, it retains the right to bring the action for all damages over $18,330,477 as well as the deductible amount (approximately $800,000). See Brocklesby Transport v. Eastern States Escort, 904 F.2d 131, 133 (2d Cir. 1990) (holding that "if the insured is only partially compensated by the insurer, both the insurer and the insured are real parties-in-interest.").

IV.

Discussion

A.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). When determining the sufficiency of the complaint the court "must accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." (Internal quotation marks omitted.) Gregory v. Daly, 243 F.3d

687, 691 (2d Cir. 2001). To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not to prove them. See Koppel v. 4987 Corp., 167 F.3d 125, 133 (2d Cir. 1999).

### B.

The court, after examining the complaint and the pertinent filed documents, concludes that the complaint's allegations are adequate to withstand a motion to dismiss. The court finds and concludes that, with respect to HHRG's interest or right to bring the present action, the complaint alleges sufficient facts to indicate that HHRG has a right to pursue its indemnification claim pursuant to the Purchase Agreement. None of the documents considered by the court show "beyond doubt" that HHRG assigned its interest in this action to the Underwriters and that a recovery would constitute "a double recovery." See Conley, 355 U.S. at 45-46.

### C.

Although not an issue addressed by the parties, the motion is vulnerable for failure of the defendant to comply with Fed. R. Bankr. P. 7012(b).[4] The complaint in paragraph 8 states: "This is a non-core proceeding pursuant to 28 U.S.C. § 157. The

---

[4]   Fed. R. Bankr. P. 7012(b) provides:

Applicability of Rule 12(b)-(h) F. R. Civ. P. Rule 12(b)-(h) F. R. Civ. P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgment shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

8

AO 72A
(Rev.8/82)

Debtor consents to the entry of final orders or judgment by the bankruptcy judge." Rule 7012(b) requires a responsive pleading by the defendant as to its position on the matter of the entry of final orders or judgments. The court believes that, for the purposes of this rule, a motion to dismiss is a responsive pleading since, if granted, it could constitute a final order and judgment. The court thus concludes that a motion to dismiss the complaint constitutes a responsive pleading for the purposes of Rule 7012(b), and if there is a failure to comply with the rule, the motion may be denied.

V.

## CONCLUSION

For all of the aforementioned reasons, the defendant's motion to dismiss the complaint is denied. It is

SO ORDERED.

Dated at Hartford, Connecticut, this 6 day of January, 2003.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In Re: Handy & Harman Refining Group, Inc. v. Handy & Harman, Inc.

Case No: 0 - 20845
Adversary No: 02 - 02273

### CERTIFICATE OF MAILING

The undersigned Clerk in the Office of the United States Bankruptcy Court hereby certifies that a copy of the document attached hereto was mailed this date to:

William H. Champlin III Tyler Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06509-1910, Plaintiff's Attorney

Raymond C. Bliss Baker O'Sullivan & Bliss PC
Putnam Park, Suite 100
100 Great Meadow Road
Wethersfield, CT 06109-2355, Defendant's Attorney

Office of the United States Trustee
Copy of Order placed in court mailbox

Dated: 01/07/03         By: bjl